UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 1:18-cv-00035 |
| ) | |
| JAMES VORLEY and CEDRIC CHANU, ) | Honorable John J. Tharp, Jr. |
| ) | |
| Defendants. ) | |

**BANK POLICY INSTITUTE'S
MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE**

Bank Policy Institute ("BPI"), by its counsel Morgan, Lewis & Bockius LLP, respectfully requests leave to file a brief *amicus curiae* in support of the defendants' motion to dismiss the indictment. The government's expansive theory of wire fraud liability advanced in the indictment potentially threatens to extend both criminal and civil penalties to many forms of legitimate, non-fraudulent commercial conduct engaged in by BPI's members. BPI seeks leave to file a brief explaining the risks posed by the government's expansive theory. If granted leave, BPI respectfully requests that it be given until February 6, 2019 to file its amicus brief.

In support of its motion, BPI states as follows:

1. BPI is a nonpartisan public policy, research, and advocacy group, representing the nation's leading banks and their customers. BPI's members include universal banks, regional banks, and the major foreign banks doing business in the United States. Collectively, BPI's members employ almost two million Americans, make nearly half of the nation's small business loans, and are an engine of financial innovation and economic growth. BPI requests leave to file an amicus brief describing the impact the government's theory of liability in this case could have on BPI's membership. In summary, BPI's amicus brief will raise the following points.

2. The indictment alleges that the defendants engaged in "spoofing" in the commodities futures market—entering orders on electronic futures exchanges that the defendants intended to cancel before they were executed. Spoofing, which is one type of disruptive trading practice, is prohibited under the Commodities Exchange Act ("CEA"), as is commodities fraud. Indeed, the government has previously pursued criminal charges under both provisions of the CEA. Given the complexity of modern high-frequency trading strategies, the specific provisions of the anti-spoofing provisions of the CEA were (and continue to be) subject to much discussion and debate so as to avoid encompassing accidental, negligent, or reckless trading.

3. Because spoofing is already a crime under the CEA, and requires that the government prove certain elements so as to avoid inadvertently reaching legitimate forms of trading, the government's attempt to fall back on allegations of generalized violations of the wire fraud statute to charge alleged spoofing is misguided. The government should not be permitted to expand the scope of the generally-applicable wire fraud statute and skirt the specific anti-spoofing provisions in the CEA that reflect the specialized statutes and rules crafted by Congress and the CFTC for the futures market.

4. Nor is the government's position inconsequential. The application of the wire fraud statute here could potentially have far-reaching consequences. The charges in the case relate to the submission of live, executable orders in futures markets to buy or sell a certain number of futures contracts at a specific price. Those orders, if accepted, would have created binding obligations on the traders submitting those orders. Although everything the order represents to the public was accurate while it was being represented, the government nonetheless claims that the conduct amounts to a criminal misrepresentation under the wire fraud statute

because the traders allegedly harbored an unspoken intent to withdraw the actionable order from the market in the future, before it was executed.

5.    Whatever restrictions may exist under the rules specific to the futures markets through the CEA, including in particular the anti-spoofing provision implemented in July 2011 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act's amendments to the CEA (the "Anti-Spoofing Statute"), no court has approved of using the generally applicable wire fraud statute to criminalize a negotiating party's failure to disclose its future intentions or subjective desire to enter into the transaction.

6.    The government's theory of prosecution poses at least two clear risks to the interests of BPI's members.  First, if the government's theory is ratified by the Court, any offer to enter into a transaction that makes only accurate factual representations and that would result in a binding contract if accepted, could be a crime if the party making the offer hoped it would not be accepted and planned to withdraw it in the future before a transaction occurred. Sophisticated parties, in dealing with one another, regularly have occasion to make representations or take positions that may not reflect their hoped-for or ideal outcome, but which nevertheless would form the basis of a deal if accepted against the unexpressed hopes of the offeror.  A common example of this is the stalking-horse bid.  These are not misrepresentations, and they are not wire fraud.  But any such practice could be second-guessed and subject to criminal prosecution if the government's theory is valid. Such a rule would upend the well-established rules governing negotiations that require a party to state the truth when making material representations, but impose no obligation upon the party to disclose its purpose or strategy to a counterparty.  *See United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016)

("Deception and misdirection about a party's values, priorities, preferences, and reserve prices are common in negotiation.").

7. Second, the government's theory would allow the government retroactively to charge violations of yet-to-be-articulated rules of conduct as criminal fraud. Conduct related to negotiations completed a decade ago could be unearthed and subject to the new, broader view of criminal conduct reflected in the indictment. This is particularly of concern in spoofing and other market disruption cases, where the Anti-Spoofing Statute was carefully drafted in an attempt to avoid encompassing legitimate trading practices. Moreover, the government's theory of implied misrepresentation could also be deployed in the civil context, allowing frustrated participants to unsatisfying negotiations to bring otherwise-frivolous claims under the RICO statute (where the mail and wire fraud statutes are commonly pled as predicate acts to support the civil RICO claim), as well as the many other civil statutes and common law causes of action that require proof of a misrepresentation.

8. BPI takes no position on whether the defendants have committed a crime under the futures-specific rules and statutes that apply to spoofing conduct. Instead, BPI objects only to the government's attempt to expand in an unprecedented way a statute, the wire fraud statute, that essentially reaches all commercial conduct. The defendants' motions to dismiss present this straightforward, but critical, legal issue.

9. The Court has discretion whether to permit an amicus brief. *Chamberlain Group, Inc. v. Interlogix, Inc.*, 2004 WL 1197258, at *1 (N.D. Ill. May 28, 2004). An amicus brief should be permitted if the amicus "has a unique perspective or specific information that can assist the court beyond what the parties can provide." *Id.* Here, BPI is able to offer a perspective on policy issues implicating the interests of its members that would be impacted if the

government is permitted to proceed on its expansive theory of wire fraud liability. This perspective reflects BPI's concern with the proper operation of financial and commodities markets as a whole, a viewpoint that is broader than the considerations of the individual defendants in the case.

10. BPI recognizes that its request for leave to file an amicus brief comes after the close of briefing and just before oral argument on the defendants' motion to dismiss. BPI retained counsel and acted as promptly as possible as soon as it understood the potential implications to BPI's members of the government's position in this case. BPI respectfully submits that its perspective will be helpful to the Court as it considers the issues raised in the defendants' motion to dismiss. If granted leave, BPI requests that it be permitted to file its brief no later than February 6, 2019.

WHEREFORE, BPI respectfully requests leave to file a brief *amicus curiae* in support of the defendants' motion to dismiss, no later than February 6, 2019.

Dated: January 23, 2019  Respectfully submitted,

By: */s/ Kenneth M. Kliebard*
Kenneth M. Kliebard
Michael M. Philipp
Gregory T. Fouts
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 324-1000
Facsimile: (312) 324-1001
kenneth.kliebard@morganlewis.com
michael.philipp@morganlewis.com
gregory.fouts@morganlewis.com

*Counsel for Amicus Curiae Bank Policy Institute*

## **CERTIFICATE OF SERVICE**

     I certify that a copy of the foregoing document was filed and served via the CM/ECF system on January 23, 2019, upon all counsel of record.

                                            */s/ Kenneth M. Kliebard*
                                            Kenneth M. Kliebard