

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Hon. John J. Tharp, Jr. |
| JAMES VORLEY and<br>CEDRIC CHANU, | No. 18-cr-35 |
| Defendants. | |

## MOTION FOR LEAVE TO INTERVENE TO
## ADDRESS THE GOVERNMENT'S RESPONSE
## TO THE DEFENDANTS' MOTION TO COMPEL

I respectfully request leave to intervene for the limited purpose of addressing the Government's response to the Defendants' pending Motion to Compel (Dkt. No. 190).

The Federal Rules of Criminal Procedure do not provide an explicit mechanism for intervention in a criminal matter by a third party, but I respectfully submit that this is the rare circumstance in which material third-party interests are implicated by the Government's brief and the Court's resolution of the Defendants' motion. In the alternative, I request that the Court grant me leave to file as *amicus curaie*, given my unique ability to provide information that appears to be of interest to the Court.

In particular, I resigned from the Department of Justice on January 31, 2020, but the Defendants' motion and the parties' briefs concern news reports about a memo that I provided to the Department's Office of the Inspector General prior to my resignation. The Government's brief and statements to this Court at a recent status hearing, however, contain misstatements of facts and law concerning the memo and the issues discussed in it.

These matters are addressed in the proposed 12-page Brief Regarding the Government's Response to the Defendants' Motion to Compel, which is attached as Exhibit A.

For the foregoing reasons, I respectfully request leave to intervene for the limited purpose of addressing the Government's Response to the Defendants' Motion to Compel. Should the Court grant this motion, I further respectfully request that the Court direct the Clerk of the Court to docket the proposed response attached as Exhibit A.

Dated: March 16, 2020

Respectfully submitted,

*[signature]*

Ankush Khardori, Esq.

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  v.<br><br>JAMES VORLEY and<br>CEDRIC CHANU,<br><br>  Defendants. | Hon. John J. Tharp, Jr.<br><br>No. 18-cr-35 |

**BRIEF REGARDING THE GOVERNMENT'S**
**RESPONSE TO THE DEFENDANTS' MOTION TO COMPEL**

Ankush Khardori, Esq.

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

DISCUSSION .......................................................................................................................... 3

    I.    The Government's Erroneous Claim that it May File "Nakedly Pretextual MLAT" Requests ................................................................................................ 4

    II.    The Government's Erroneous Claims About the Timing of Events Addressed in the Memo ...................................................................................... 5

    III.    The Government's Erroneous Dismissal of the Memo's Contents Based on Alleged "Secondhand and Circumstantial Evidence" ........................................... 7

    IV.    The Government's Apparent Failure to Comply with Justice Department Policy Concerning the Preparation of its Brief ..................................................... 8

    V.    The Government's Offer to "Provide Materials" to the Court ............................. 9

    VI.    The Government's Erroneous Privilege Assertion ............................................... 9

    VII.    The Government's Baseless Request for the Court to Defer Any Inquiry Regarding the Memo ......................................................................................... 10

    VIII.    The Government's Erroneous Claims Regarding the Credibility of the Memo ................................................................................................................. 10

CONCLUSION ..................................................................................................................... 12

I respectfully provide this submission to address the Government's Response to the Defendants' Motion to Compel (Dkt. No. 190).

## INTRODUCTION

The Government has claimed that it is taking the matters raised by the Defendants' motion seriously—a motion that concerns a 50-page memo that I wrote (the "Memo")—but its brief belies that claim.

A week ago, it would have been absurd for the Department of Justice's Fraud Section (i) to publicly argue that it is acceptable to file a "nakedly pretextual" MLAT tolling application with this Court—a claim that the Government is free to mislead the Court; (ii) to argue that the "four corners" of a statement should be evaluated without regard to the "subjective motivations" of the speaker—in a spoofing case, no less; (iii) to write about the implications of a memo that the Government's attorneys have not seen; (iv) to offer documents to resolve issues raised in a memo without addressing whether that production will include the memo itself; (v) to argue that documents are sufficient to resolve the matter even though the memo at issue details numerous relevant oral communications; (vi) to denigrate "circumstantial" evidence even though standard jury instructions explain why that is misguided; (vii) to argue that the Court should defer to the Department in its handling of a memo whose existence it simultaneously refuses to confirm; or (viii) to file a brief in which three of the four attorneys in the signature block are directly implicated by the potential conduct at issue. (*See* Dkt. No. 190 at 2, 8, 13-14, 21 n.9.)

Somehow, in the span of the Government's 22-page filing last Friday, all of those things happened.

I agree with the Government that the Defendants have not demonstrated their entitlement to the materials they seek, but that does not resolve the Court's ability to pursue its independent

interest in the matter. As explained further below, the Government's brief contains errors ranging from misstating the law of fraud to the law of evidence.

The Government also made claims at the status hearing concerning the briefing on the defendants' related motion in the *Bases* proceeding pending before Judge Lee that, as the Memo makes clear, are untrue. In real time, the Government appears to be confirming the concerns raised in the Memo.

To start, the Government claims that there is no authority indicating that "even a nakedly pretextual MLAT" request "constitutes misconduct" (Dkt. No. 190 at 14). This is wrong for reasons that are addressed at length in the Memo, but it is rendered absurd by the Government's effort to have the Court adopt the very analysis that the Government opposed when the Defendants were arguing that their alleged spoof orders could not constitute fraudulent misrepresentations—claiming, as the Government now puts it, that the "four corners" of a statement in a tolling application must be evaluated without regard to the "subjective motivations" of the speaker (Dkt. No. 190 at 13-14).

This misstates one of the most basic and longstanding axioms of the law of fraud. Of course, a statement may technically be true (for instance, the statement in an MLAT tolling application to a judge that the Government has requested evidence from a foreign country) while carrying an implied misrepresentation (that the Government actually wants the evidence and is not using it as a pretext to extend the statute of limitations). None of the cases cited by the Government supports the claim that Government officials are free to mislead courts in this way, no court has ever adopted it, and the law of fraud does not exempt representatives of the Government.

At the most recent status conference before Judge Lee in the *Bases* proceeding, the attorney representing the Government claimed that I did not have concerns about the propriety of the MLAT

2

Tolling Order while working on the case—a representation from the same attorney leading the Government's response in this case. That is false. In fact, *I told that attorney* about those concerns at the time, along with at least five other attorneys identified in the Memo, including the head of the unit in which I worked.

As I believe the Memo demonstrates, I did my best in what was a difficult situation. For reasons that I believe are evident from the Memo, I do not believe that I could have done more—in light of events that spanned two years and that, based on contemporaneous email correspondence, may have involved multiple senior career officials in the Fraud Section—without losing my job. At a minimum, the Court should not indulge the Government's effort to shift the blame to me for potential misconduct that I had nothing to do with, that I was repeatedly raising concerns about (to the detriment of my career at the time), and that I attempted to extricate the Government from.

The Government's misstatements will not survive contact with the Memo. The Court should direct the Government (or me) to produce the Memo for *in camera* review forthwith, and it should make its own judgment about its contents. The Government can also produce whatever it believes will exculpate itself—even as it refuses to squarely address what that information supposedly shows.

## DISCUSSION

As explained further below, the Government's submission and comments before this Court contain several misstatements of fact and law, and they raise concerns about the Department's handling of the issues raised in the Memo and the parties' dispute.

3

I.  **The Government's Erroneous Claim that it May File "Nakedly Pretextual MLAT" Requests**

First, the Government makes the remarkable claim that it is free to mislead judges using pretextual MLAT requests to obtain tolling orders that can then be used to support criminal charges—arguing that there is no authority indicating that "even a nakedly pretextual MLAT" request "constitutes misconduct" (Dkt. No. 190 at 14).

This analysis purports to be based on the relevant statute and case law, but as the Memo explains, it is wrong. The text, logic, and purpose of the MLAT tolling provision indicate that a request for foreign evidence must be legitimate in order to support a tolling application to a court.[1] The effort to obtain evidence should be a sincere one—even if that evidence ultimately is not secured or used to support the government's indictment. So far as I am aware, no court in the country has endorsed the proposition advanced by the Government—that a "nakedly pretextual MLAT" request can be used to obtain a tolling order from a court.

Setting aside the inaccuracy of the Government's description of the relevant case law concerning the tolling statute—the most glaring problem with which is its failure to mention, much less address, Judge Breyer's handling of the matter two years ago in the *Bogucki* prosecution in the Northern District of California[2]—the Government does not address other applicable statutes or governing ethical rules. For example, the Government contends that the Court is confined to

---

[1] *See, e.g.*, House Report 98-907 (1984), reprinted in 1984 U.S.C.C.A.N. 3578 (explaining that the "purpose of the legislation" was (among other things) "to extend statute of limitation and Speedy Trial Act deadlines when evidence located in foreign countries must be obtained").

[2] *See* William F. Johnson, "Whistleblower Illuminates Abuse of Process," *The New York Law Journal*, Mar. 5, 2020, *available at* https://www.kslaw.com/attachments/000/007/649/original/3-5-20_New_York_Law_Journal.pdf?1583430891 (noting that Judge Breyer "strongly rejected [the] argument" that "the court had 'no basis going beyond the four corners'" of an MLAT tolling application).

evaluating an application for a tolling order predicated on an MLAT request based only on whether the Government has represented in the "four corners" of the application that an official request was made for foreign evidence and that evidence may exist in that foreign country—even if the "subjective motivations" of the prosecutors have nothing to do with obtaining that evidence (Dkt. No. 190 at 13).

That argument is functionally equivalent to the position that the Defendants took when they argued that spoofing cannot constitute wire fraud (*i.e.*, that an order communicates nothing more than its proposed terms, irrespective of the purpose of placing that order), and it is wrong in this instance as well. It is, for example, unlawful to make false statements to government entities— including the judicial branch—and false statements include implied misrepresentations.[3]

The Government's position is cause for serious concern. It suggests that the concerns that were cautiously raised in the Memo are warranted.

## II. The Government's Erroneous Claims About the Timing of Events Addressed in the Memo

In the most recent status hearing before Judge Lee in the *Bases* proceeding, the Government made several misleading comments concerning the underlying facts discussed in the Memo and the Government's December 2018 response to the defendants' motion to compel in that case. In particular, Mr. Perry, referring to my drafting of that filing, stated, "He filed that brief. He wrote that brief and signed that brief and filed that brief. So, these are not issues that, at the time at least, appeared to have concerned him." (Transcript of March 3, 2020 Hearing at 7:25-8:3; *see also* Dkt. No. 190 at 8-9.)

---

[3] *See, e.g.*, U.S. Department of Justice Manual, Criminal Resource Manual §§ 902, 903, 914, *available at* https://www.justice.gov/archives/jm/criminal-resource-manual-901-999.

5

Mr. Perry also "signed that brief," and before I finished writing it, I told him what my concerns were about the MLAT tolling application during a phone call with him while I was sitting in my office with the brief on my computer screen, and I believe I also shared with him the email correspondence that I had obtained involving the preparation of the application—correspondence that is appended to the Memo.

I apprised him of my concerns for two reasons—even though I had as much information on the matter as he did: (1) because I thought, as co-counsel on the case, he should know everything that I knew and what my thinking was; and (2) because I wanted to make sure that, in reviewing the draft before it was filed, he agreed that the issue was being handled judiciously—and not in a way that would mislead the Court. *Cf. Kiobel v. Millson*, 592 F.3d 78, 87 (2d Cir. 2010) ("The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most [situations] should be sanctioned for a violation.") (internal quotations omitted).

Not that I would have relied on Mr. Perry's judgment alone. While at his prior job working as an AUSA in the District of Connecticut, a federal judge concluded that he and other government attorneys had "coerced" a defendant "to waive" certain "constitutional" rights, and that their behavior had "smack[ed] of manipulation [and] harassment." Opinion, *United States v. Flotron*, 3:17-cr-220 (JAM) (D. Conn. Feb. 19, 2018). (The Government lobbied for that opinion to be diluted in an amended order, but the material facts did not change.)

Besides Mr. Perry, at least five other attorneys in the Fraud Section were aware at the time of the December 2018 filing in the *Bases* proceeding of my view that the MLAT Tolling Order may have been improperly obtained. I know this because I told them. The Memo identifies all five of those people, and at least four of them told me at the time that they shared my concerns.

6

That said, for reasons that I can elaborate on if the Court would like, my concerns about the implications of the conduct evolved as I prepared the Memo.

Mr. Perry's comment at the conference before Judge Lee also elided two different issues that are relevant to this proceeding as well: (1) whether the MLAT Tolling Order was improperly obtained, and (2) whether that should have been disclosed to this Court in post-indictment proceedings, even though the Government was not relying on the order.

Given the facts described in the Memo, I believe it is clear that there was no chance that I would have been allowed to make that disclosure if it had been required. That conclusion is based on events spanning two years in which I raised concerns about the potential use of pretextual MLAT requests in two separate proceedings, in light of the seniority of the people who may have been involved, and given the fact that I directly expressed my concerns to at least eight people who were at the time or are currently supervisors in the Fraud Section.

As a result, I did my best to proceed on behalf of the Government in a manner that was fair to the defendants in the *Bases* proceeding (by not relying on the tolling order) while also apprising colleagues with comparable interests and taking seriously my obligations toward the Court.

To the extent any of the foregoing information may once have been covered by the work-product doctrine, Mr. Perry's comments and the Government's brief have waived that protection—even setting aside at least one other exception to the doctrine that is discussed further below.

### III. The Government's Erroneous Dismissal of the Memo's Contents Based on Alleged "Secondhand and Circumstantial Evidence"

The Government criticizes the Defendants for relying on "media reports of a former prosecutor's allegations—themselves reported to be based on secondhand and circumstantial evidence" (Dkt. No. 190 at 8), but that is not true.

7

Nothing in the Memo is based on "secondhand" information, and little of what is likely to be of interest to this Court is based on "circumstantial" evidence. To the extent the Memo refers to "circumstantial" evidence, it is axiomatic that "[t]he law does not say" that circumstantial evidence is any less probative than direct evidence. Seventh Circuit Pattern Jury Instructions § 2.03.

As is relevant to this Court, the Memo describes and provides emails that are contemporaneous with the conduct at issue. It also recounts conversations to which I was a party— information of the sort that the Government routinely offers into evidence in litigation rather than attempting to downplay as unreliable.

### IV. The Government's Apparent Failure to Comply with Justice Department Policy Concerning the Preparation of its Brief

There is no indication in the Government's brief that it complied with Justice Department policy that governs litigation concerning professional misconduct allegations by Government attorneys. That policy specifies that "[b]efore any pleading or other document concerning any non-frivolous allegation of misconduct by an attorney is filed . . . it must be reviewed by a supervisor who is not implicated by the allegation." Justice Manual § 1-4.330, *available at* https://www.justice.gov/jm/jm-1-4000-standards-conduct#1-4.330.

It is unclear whether the Department complied with its policy. Two attorneys on the signature block of the Government's brief are on email correspondence that is appended to the Memo and that is likely to be of interest to the Court. And as noted above, any concern about the Government's representations to Judge Lee extends to Mr. Perry as well, despite his effort to act as if he did not sign the relevant brief—and despite his ostensible failure to recall that he was apprised at the time of my concerns and of the same facts that I had.

8

The Justice Department's guidance provides no private right of action, but the policy helps to ensure that Defendants and courts are not beholden to the purported legal analysis of individuals involved in conduct that the Department does not (or should not) endorse—people who, for example, might otherwise attempt to convince judges that Government attorneys are free to mislead them. It also inhibits the spread of misinformation.

**V.     The Government's Offer to "Provide Materials" to the Court**

The Government states that it is prepared to "provide materials for the Court to review *in camera*" (Dkt. No. 190 at 1), but it does not indicate whether that production would include the Memo or its exhibits—nor does it explain how the relevant documents were collected and by whom. If the collection, review, and production process involved attorneys whose conduct may be at issue, that would be cause for concern.

More importantly, I do not believe that the conduct addressed in the Memo can be evaluated solely by reference to documents because the Memo provides detailed descriptions of key verbal conversations. It also describes events similar to those that may have occurred before this Court that took place in front of a different court—events that would, for example, be relevant under an analysis pursuant to Federal Rule of Evidence 404(b).

If the Government were taking the Court's concern seriously, it would already have set up an independent team outside of the Fraud Section in order to undertake the document collection and review and to interview the relevant attorneys. Evidently none of that has happened.

**VI.     The Government's Erroneous Privilege Assertion**

The Government criticizes the Defendants for failing to explain "how or why they could overcome the fact that the materials they seek are quintessential privileged materials" (Dkt. No. 190 at n.4). Under the crime-fraud exception, that claim is specious—a fact that the Government otherwise routinely notes when asking courts to permit it to access potentially privileged

9

documents relevant to criminal investigations. *Cf. United States v. Boender*, 649 F.3d 650, 655 (7th Cir. 2011).

### VII. The Government's Baseless Request for the Court to Defer Any Inquiry Regarding the Memo

The Government suggests that the Court should defer pursuing any interest it may have in the contents of the Memo and allow the Department's Office of the Inspector General or Office of Professional Responsibility to evaluate "the claims [in the Memo] in the first instance." (Dkt. No. 190 at 21 n.2.) This claim is made despite the Government's simultaneous refusal to confirm that the Memo exists. *See id.* ("If it is true, as reported . . . .").

In any event, the Government does not explain whether either office has opened an inquiry—and if so, what its status is or how long it might last. Under the circumstances—particularly given the Government's position that there is nothing wrong with even a "nakedly pretextual" MLAT request and its handling of the matter in representations to the Court in recent weeks—the Court should be wary of this invitation.

### VIII. The Government's Erroneous Claims Regarding the Credibility of the Memo

It is my understanding that the Government described me at the most recent conference in this proceeding as a "disgruntled whistleblower." This redundant and tiresome cliché is true but irrelevant: I am displeased by conduct that I never thought I would see or be subjected to when I joined the Government, but that has nothing to do with whether the facts set forth in the Memo are accurate and whether the concerns raised in the Memo are warranted.

The characterization is also dubious considering the fact that the Government routinely relies on "disgruntled whistleblowers" to initiate criminal investigations—if, as in this instance, their factual contentions are detailed and can be corroborated by documents and witnesses, and if their concerns are warranted under governing law.

10

Finally, I understand that at the most recent status conference in this proceeding, the Government referenced the existence of an "investigation" involving me. To be clear: The investigation was in fact part of a months-long effort by the Section's senior management to punish me for raising concerns internally about the deficient professional performance and ethical misconduct of one of the Fraud Section's senior career officials, and it has (to date) resulted in no sanction against me. As I understand it, the investigation began after an inquiry from *The Associated Press* concerning that official's potential misconduct, and it is supposed to concern how the news organization obtained its information—even though none of the information that appears to be at issue was classified or otherwise prohibited from disclosure outside of the government.[4]

I addressed my departure from the Department in detail in a separate memo that I provided to the Office of the Inspector General on January 31, 2020, which explains that I did nothing improper. Among other things that may now be of interest to the Court as a result of the Government's comments, that memo describes *another* episode in which a senior Fraud Section official complained about putting information about misconduct "in writing" (the Memo describes such an episode as well); an episode in which a veteran FBI agent accused a senior Fraud Section official of having "lied" to him (about a trivial matter—but telling); instances in which senior Fraud Section officials have made material misstatements in official internal government

---

4  *See, e.g.*, U.S. Department of Justice, Office of the Inspector General, "Whistleblower Rights and Protections," Sept. 2019, *available at* https://oig.justice.gov/hotline/whistleblower-protection.htm (explaining that "[i]n general, [DOJ] employees may disclose information to anyone, including non-governmental audiences, unless the information is classified or specifically prohibited by law from release"—provided that the disclosure is based on a "reasonable belief" that it reflects the "[v]iolation of any law, rule or regulation," [g]ross mismanagement," "[g]ross waste of funds," "[a]buse of authority," or "[s]ubstantial and specific danger to public health or safety.").

11

documents, apparently intentionally; and proposed legal filings in which a senior Fraud Section official was making material misstatements of fact and law. (Jan. 31, 2020 Memo at 12-21, 24, 29, 38-41.)

In light of the Government's comments to the Court, I respectfully request that the Court direct the Government (or me) to produce that memo for *in camera* review as well. I have no objection to the Government providing anything else on the subject that it chooses, but I respectfully request a copy so that I have the opportunity to address any additional representations to the Court on the matter.

## CONCLUSION

The Court should direct the Government (or me) to produce for *in camera* review forthwith the two memos that are implicated by the parties' filings—one dated January 30, 2020 (concerning the MLAT Tolling Application) and the other dated January 31, 2020 (concerning my resignation).

Dated: March 16, 2020

Respectfully submitted,

Ankush Khardori, Esq.