UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) No. 18 Cr. 35 (Tharp, J.) |
| v. | ) |
| | ) |
| JAMES VORLEY and CEDRIC CHANU, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DEFENDANTS' MOTION TO PRECLUDE TESTIMONY
### OF SPECIAL AGENT JONATHAN LUCA

Defendants James Vorley and Cedric Chanu respectfully move to preclude certain testimony of Special Agent Jonathan Luca from their upcoming trial pursuant to Federal Rules of Evidence 403, 701, and 702, and the Due Process and Confrontation Clauses.

### INTRODUCTION

The government intends to call its lead case agent, Special Agent Luca, who briefly worked as a precious metals trader before joining the FBI, "to testify about trader habits, communications, and practices." Ex. A, Gov't Expert Disclosures, Feb 4, 2020, at 3. While the government claims that "much of his testimony will be based on his own investigation and therefore will not constitute expert testimony," *id.*, the government's expert disclosure makes clear that Special Agent Luca is, in fact, being called to testify based on his purported specialized knowledge of the precious metals market—that is, as an expert.

The government anticipates that Special Agent Luca will testify about "the manner in which orders are placed, modified, executed, and canceled," different types of traders in the precious metals futures markets, and the "visible order book." *Id.* He is also expected to testify that orders that increase the visible supply or demand in the order book are "capable of influencing"

1

and are "often an important factor" in "a market participant's decision making process" when trading. *Id.* at 3-4. In addition, he is expected to define certain "shorthand terms" found in electronic chat communications, including "jam," "spam," "get given," "help," "bid it up," "push," "long," "short," "flat," and "get me out." Ex. B, Gov't Supplemental Expert Disclosures, Feb. 12, 2020, at 2.

None of this qualifies as lay testimony, nor should it be permitted as expert testimony. *First*, as the Seventh Circuit has cautioned, allowing a case agent to testify both as an expert and fact witness can lead to jury confusion and unfair prejudice because the jury (a) may not understand at any given moment whether the agent is providing testimony as an expert or describing his observations as the case agent and (b) may unduly credit the testimony on the assumption that the dual role gives the witness a superior ability to assess the facts in his capacity as a lay witness and lend opinions additional weight in his expert capacity on the assumption he is privy to information about the investigation not available to a traditional expert.

*Second*, Special Agent Luca's proposed testimony would improperly bolster the testimony of other testifying and non-testifying government witnesses. His testimony defining "shorthand terms" in electronic communications will merely parrot statements by the government's cooperating witness, David Liew, during government interviews where Liew purported to explain the meaning of the exact same terms. Likewise, his opinions on how other market participants respond to visible orders will simply repeat out-of-court statements made during interviews with potential government witnesses that alleged spoof orders are "capable of influencing" trading decisions.[1]

---

[1] We presume Special Agent Luca will not be testifying about spoofing, other forms of alleged market abuse, and the selection of terms the government argues reveal malfeasance based on his own brief experience as a trader. If that were the case, the government would have an obligation

*Third*, Special Agent Luca is not qualified to testify as an expert on technical matters such as how high frequency trading firms or other market participants interpret visible orders or the meaning of shorthand terms in electronic messages. His two to three years trading experience suggests no particular expertise in high frequency trading or an admissible basis for specialized knowledge of trading terms beyond what he has heard during interviews with potential government witnesses.

The dangers of Special Agent Luca providing testimony in a dual role should have been obvious to the government, as they were front and center in *United States v. Flotron*, 17-cr-220, (D. Conn.). In *Flotron*, the government's initial disclosure, as in this case, stated that Special Agent Luca would likely testify about market concepts relating to the precious metals market. *See Flotron*, Dkt. 109-1, Defendant's Motion *in Limine* to Preclude Expert Testimony by Special Agent Luca, at pp. 1-2. The defendant in *Flotron* moved to exclude Special Agent Luca's testimony on the basis that permitting such testimony would be unfairly prejudicial under Federal Rule of Evidence 403 in light of his dual role as an expert and case agent. *See Flotron*, Dkt. 109.

At a hearing on the motion, the judge asked the government why they would proffer an expert witness with a dual role. *See Flotron*, Dkt. 179, Pretrial Conference Hearing Transcript, at Tr. 28:12-14. In response, then Assistant United States Attorney, and now current Chief of the Fraud Section, Robert Zink, who joined Mr. Perry to form the *Flotron* prosecution team, acknowledged that the government should have retained an independent expert:

> Your Honor, in truth and candor, I wish we had done it differently. ***I wish we had gotten an expert and eliminated this problem entirely.*** Special Agent Luca was assigned to the case because he was a precious metals trader and he had invaluable insight. . . . I think it's probably too late at this stage for us to get another expert.

---

to disclose such information under *Brady* because it would tend to show the historical and widespread use of such practices.

3

*Id.* at Tr. 15-22 (emphasis added). The court subsequently ordered the government to provide a revised summary of Special Agent Luca's proposed testimony. *Flotron*, Dkt. 178, Orders Re Pretrial Motions, at p. 2.

Ultimately, the government withdrew its initial disclosures and notified the court and the defendant that it instead intended "to call Special Agent Luca as its first witness to (1) provide overview testimony relating to the futures markets and futures trading generally and (2) admit certain exhibits into evidence (and provide related testimony)." *Flotron*, Dkt. 187, Letter to Judge Meyer, at p. 1. The court ruled that Special Agent Luca would be permitted to testify "in a dual expert/witness capacity" subject to the revised limited scope offered by the government after the defendant's renewed objection, which included an agreement "not to query beyond very basic questions as proposed by the Government about price response to supply/demand or to query concerning reasons for a market order to be cancelled." *Flotron*, Dkt. 198, Ruling Re Pending Motions *in limine*, at p. 2.

Special Agent Luca should not be permitted to serve as an expert even for that limited purpose here. If in the past two years the government has been unable to find a single precious metals trading expert whose testimony would support the government's theory of the case that alone serves as a reason to preclude Special Agent Luca's testimony as an expert. *United States v. George*, 363 F.3d 666, 672 (7th Cir. 2004) ("*Daubert* . . . outlines a number of factors that a trial court should consider in deciding whether expert testimony is reliable, specifically . . . whether it is generally accepted."). If the government has not even tried to find another expert who will adopt its theory despite the *Flotron* court's admonition, the government alone bears the blame.

4

**STATEMENT OF FACTS**

Special Agent Luca is the case agent in this case. Prior to joining the FBI in 2011, he worked for seven years at Morgan Stanley, first in operations and as a trade assistant before spending his final two to three years as a precious metals trader. Ex. A at 3; *Flotron* Dkt. 229, Trial Tr. 45:12-19; 85:25-86:1. During his stint as a trader, Special Agent Luca served as the lead of the bank's two-person desk for "a very brief period of time," *id.* at Tr. 48:12-20, and has admitted that when he changed careers with less than three years' experience as a trader, he was "still learning" about the precious metals futures market. *Id.* at Tr. 85:25-86:1; 86:5-14.

Although the government has asserted that Special Agent Luca's testimony will be based on his own investigation as the case agent, much of the disclosures have nothing to do with his investigation. They are about precious metals trading and the visible order book. And to the extent that Special Agent Luca's proffered testimony *is* based on his investigation, the testimony will be based on interviews with both testifying and non-testifying witnesses. He has attended over half a dozen meetings with lawyers for Deutsche Bank, nine interviews with the government's cooperating witness, Liew, as well over 40 other interviews during the course of this case, including with employees of the alleged victims, Quantlab and Citadel. As the case agent, Special Agent Luca is also familiar with the FBI 302s for the interviews that he did not personally attend.

During the course of his many interviews with the government, Liew was asked to explain the meaning of electronic chats containing the very same terms that Special Agent Luca is expected to define for the jury at trial. For example, Liew stated multiple times in his interviews that the terms "spam," "jam," are synonymous with the term "spoof." David Liew April 5, 2017 Interview 302, DOJ01983083 at p. 15; Liew June 1, 2017 Interview 302, DOJ01983616 at p. 4; Liew

5

November 13, 2017 Interview 302, DOJ01983772 at p. 4. He also defined the terms "get given," "help," "[b]id it up," and "[p]ush." *See* Liew November 13, 2017 Interview 302, DOJ01983772 at pp. 10, 13, 17; Liew April 5, 2017 Interview 302, DOJ01983083 at pp. 4, 5. Special Agent Luca's testimony would simply reiterate Liew's own testimony.[2]

The government's alleged victims have also made statements in interviews in line with Special Agent Luca's anticipated testimony that visible supply and demand "is capable of influencing a market participant's decision to place an order." Ex. A at 3-4; *see* Travis Verner, December 11, 2019 Interview 302, DOJ04560453 at p. 4; Anand Twells, December 10, 2010, Interview 302, DOJ04562702 at p.1. Again, Special Agent Luca's proposed testimony simply parrots what other witnesses have said to the government.

## ARGUMENT

### I. THE PROPOSED TESTIMONY OF SPECIAL AGENT LUCA IS EXPERT TESTIMONY UNDER RULE 702

Expert testimony relies on "scientific, technological or other specialized knowledge that the lay person cannot be expected to possess." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002). In particular, a law enforcement agent testifies as an expert when he or she brings professional experience "to bear on [] personal observations and make connections for the jury based on that specialized knowledge." *United States v. Jones*, 739 F.3d 364, 369 (7th Cir. 2014); *see also United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012) ("an officer testifies as an expert when he brings the wealth of his experience as [an] officer to bear on those observations and ma[kes] connections for the jury based on that specialized knowledge.") (internal citations and

---

[2] As noted, if Special Agent Luca knows these terms from his stint trading, the defendants should be provided with *Brady* disclosures concerning his first-hand interaction with spoofing and market manipulation.

quotations omitted)). In contrast, lay testimony "is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Conn*, 297 F.3d at 554.

Here, the government's disclosures make clear that Special Agent Luca is expected to testify based on his specialized knowledge about the precious metals markets—namely, the practices and methods used to trade precious metals contracts; the market participants who trade precious metals futures contracts; the mechanisms of the visible order book available on the COMEX and NYMEX; and the impact of placing certain orders on the market. Ex. A at 3-4. The government also proposes that Special Agent Luca will define terms that traders used in electronic chat systems. *Id*. at 4. This is all expert testimony and should be treated as such. *See Conn*, 297 F.3d at 554; *Jones*, 739 F.3d at 369 ("[T]estimony which goes beyond the observations that a normal person could make, and is based instead on the specialized knowledge obtained through experience in the field, must meet the requirements of Rule 702 as expert testimony.").

## II. SPECIAL AGENT LUCA SHOULD NOT BE PERMITTED TO SERVE A DUAL ROLE AS THE CASE AGENT AND AN EXPERT WITNESS

Like the judge who presided over the *Flotron* trial, the Seventh Circuit has recognized the inherent dangers in allowing a case agent such as Special Agent Luca to testify as an expert. The "jury may attach undue weight to the officer's testimony, either by mistaking an expert opinion for what is really only an eyewitness observation, or by inferring that the officer's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial." *United States v. Morris*, 576 F.3d 661, 675 (7th Cir. 2009) (internal citations and quotations omitted); *see also United States v. Dukagjini*, 326 F.3d 45, 53-54 (2d Cir. 2003) ("when the prosecution uses a case agent as an expert, there is an increased danger that the expert

7

testimony will stray from applying reliable methodology and convey to the jury the witness's 'sweeping conclusions' . . . deviating from the strictures of Rules 403 and 702.") (internal quotations omitted)). In this case, Special Agent Luca's testimony will weave together fact and expert testimony in a way that would unduly prejudice the defendants. Moreover, Special Agent Luca will improperly bolster the testimony of other witnesses and lacks the requisite expertise to render many of his opinions.

### A. Special Agent Luca's Testimony Will Be Confusing and Unduly Prejudicial

Lay and expert testimony by a law enforcement agent inherently "runs the risk of being overly prejudicial." *Morris*, 576 F.3d at 675. This is because jurors cannot tell at any given moment whether the witness is providing lay testimony based on personal knowledge or expert opinion. *See United States v. York*, 572 F.3d 415, 425 (7th Cir. 2009) (finding that the intertwined expert and fact testimony heightened the possibility for juror confusion); *United States v. de Soto*, 885 F.2d 354, 360 (7th Cir. 1989) ("[T]his intermingling of the two roles increased the possibility that the jurors would not distinguish between Lt. Dailey's role as eyewitness and his role as an expert."). Dual testimony also presents the danger that the "the jury might be smitten by an expert's aura of special reliability and therefore give [the expert's] factual testimony undue weight." *United States v. Cheek*, 740 F.3d 440, 447 (7th Cir. 2014) (internal citations and quotations omitted). The jury may also "unduly credit the opinion testimony of [a case agent] based on a perception that the expert was privy to facts about the defendant not presented at trial." *Id.* (internal quotations and citations omitted).

For example, if Special Agent Luca were to discuss the practices and methods of electronic commodities trading or how he believes other market participants make trading decisions, *see* Ex. A at 3-4, his (speculative) answers will inevitably be based on both his role in the investigation of

this case and related cases *and* his brief experience as a precious metals trader. Likewise, if Special Agent Luca were to testify regarding the terms traders use when communicating on electronic "chat" systems, it would be impermissible for Special Agent Luca to provide such testimony based on his experience in other investigations without qualifying as an expert under Rule 702. *See United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005) (holding that "the foundation requirements of Rule 701 do not permit a law enforcement agent to testify to an opinion so based and formed if the agent's reasoning process depended, in whole or in part, on his specialized training and experience"); *United States v. Fenzl,* 670 F.3d 778, 782 (7th Cir. 2012) (lay testimony is not admissible where the reasoning process depends upon specialized training or experience). Allowing him to present such testimony in his role as the lead case agent would cause juror confusion and be unfairly prejudicial.

       The Seventh Circuit has allowed a witness to testify as both a lay and expert witness where proper safeguards have been implemented to mitigate the risk of juror confusion and unfair prejudice. *See United States v. Goodwin*, 496 F.3d 636, 641-42 (7th Cir. 2007) (appropriate safeguards for a dual witness include cautionary instructions and structuring the examination to make clear when "the witness is testifying to facts and when he is offering his opinion as an expert." (internal quotations and citations omitted)); *United States v. Farmer*, 543 F.3d 363, 371 (7th Cir. 2008) (finding that the proper safeguards were taken to separate the agent's fact testimony about the investigation from expert testimony on coded drug language). However, such safeguards would be unworkable here given the intertwined nature of Special Agent Luca's knowledge. The government acknowledges as much in its claim that Special Agent Luca will testify only as a fact witness and its failure to outline safeguards to make his proposed testimony tenable, even after acknowledging to the judge in *Flotron* that it should have retained an independent expert. For

9

these reasons, Special Agent Luca's proposed testimony about "trader habits, communications, and practices" should be precluded under Rule 403. *See York*, 572 F.3d at 426 (finding that an agent gave improper lay testimony regarding certain code words); *United States v. Oriedo*, 498 F.3d 593, 603-4 (7th Cir. 2007) (finding that an agent's purported lay testimony regarding narcotics practices was improperly characterized and introduced); *United States v. Grinage*, 390 F.3d 746, 749-50 (2d Cir. 2004) (finding that an agent's testimony regarding drug terms went beyond permissible lay testimony).

### B. Special Agent Luca's Testimony Would Improperly Bolster Other Testimony

Special Agent Luca's testimony should also be excluded because it will improperly bolster the testimony of the other government witnesses. *See United States v. Cruz,* 981 F.2d 659, 664 (2d Cir. 1992) ("expert testimony cannot be used solely to bolster the credibility of the government's fact-witnesses by mirroring their version of events"); *see also Nunez v. BNSF Railway Co.*, 730 F.3d 681, 684 (7th Cir. 2013) ("vouching for a lay witness is not expert testimony"); *Giuffre v. Jefferson*, No. 14 C 3692, 2017 WL 951239, at *2 (N.D. Ill. Mar. 10, 2017) ("expert testimony cannot be offered merely for the purpose of bolstering the credibility of a party's version of the facts").

*First*, the government's cooperating witness, David Liew, has defined the very same terms that the government intends to have Special Agent Luca define, including "spam" and "jam." *See, e.g.*, Liew April 5, 2017 Interview 302, DOJ01983083 at p. 15 ("Spam was another word for spoof."); Liew June 1, 2017 Interview 302, DOJ01983616 at p. 4 ("Synonyms with the word 'spoofing were the terms 'spamming' and entering 'fake bids.'"); Liew November 13, 2017 Interview 302, DOJ01983772 at p. 4 ("The terms 'spam' and 'jam' were synonymous with spoof and meant to rapidly place orders on one side of the market.").

Liew has also defined other words Special Agent Luca intends to define. For example, In Liew's words, "get given" means "to not get executed on a buy side order." Liew November 13, 2017 Interview 302, DOJ01983772 at p. 13. "Push" means to move the "market price in a direction favorable" to the trader. Liew April 5, 2017 Interview 302, DOJ01983083 at p. 4. "Bid it up" means to "build it up and beef it up." Liew November 13, 2017 Interview 302, DOJ01983772 at p. 10. In defining "help," Liew stated "[t]he unspoken rule on the PM desk was to help each other out when an ordered stalled, or a trader need to clear risk. If the desk had a large order that stalled out, it was common practice for someone to step in with a spoofed order to help with the order get filled." *See* Liew April 5, 2017 Interview 302, DOJ01983083 at p. 5. Special Agent Luca's knowledge regarding these terms based on interviews in this case or related investigations is not a proper basis for firsthand knowledge or expert testimony and serves purely to bolster other government witnesses.[3] *See Fenzl*, 670 F.3d at 782 (finding hearsay testimony by a lay witness "peculiarly unreliable" and inadmissible where the witness was "part of the prosecution team" and testified to "impressions gleaned from discussions and observations . . . and drew "inferences from stray comments and from things he'd learned in previous investigations.").

*Second*, Special Agent Luca's anticipated testimony about the perceptions of other market participants would similarly serve only to bolster the anticipated testimony of other government witnesses. Ex. A at 3-4. The alleged victims, all of whom were interviewed by Special Agent Luca, will likely testify regarding what effect, if any, certain orders placed by the defendants had on their decisions in the market. Travis Verner of Quantlab previously told the government that spoof orders "are capable of influencing" Quantlab's algorithm because Quantlab's algorithm

---

[3] If his knowledge is based on his own experience, he should have been designated as an expert and significant further explanation and disclosure would have been required.

assumes "bids and offers [are] a genuine expression of interest in the market" and because the algorithm factors in "supply and demand" into its decision making process. *See* Verner, December 11, 2019 Interview 302, DOJ04560453 at p. 4. Similarly, Anand Twells of Citadel, when reviewing trade data, identified for the government a sell order that "was capable of, and did in fact, influence [Citadel's] algorithm's trading decision." Twells, December 10, 2010, Interview 302, DOJ04562702 at p.1. He explained this was because Citadel's algorithm "incorporated the assumption that live orders in the market reflected legitimate supply and demand." *Id.* Special Agent Luca's hearsay testimony based on these interviews is not admissible.[4]

To the extent Special Agent Luca relays the substance of statements made by non-testifying witnesses during interviews with the government, his testimony would also violate the defendants' constitutional rights to confront the witnesses against them. *See Crawford v. Washington*, 541 U.S. 36, 42 (2004); *York*, 572 F.3d at 427-28 (noting a confrontation problem may arise where an agent bases his interpretations on his own conversations with witnesses and not on professional expertise); *United States v. Silva*, 380 F.3d 1018, 1019 (7th Cir. 2004) (warning "against the potential for abuse when police testify to the out-of-court statements of a confidential informant"); *United States v. Mejia*, 545 F.3d 179, 198-99 (2d Cir. 2008) (noting a *Crawford* violation may arise if an officer's expert testimony "communicated out-of-court testimonial statements . . . directly to the jury in the guise of an expert opinion") (internal citations and quotations omitted)). The risk of violating defendants' confrontational rights is particularly acute here, given that Special Agent Luca has attended over 40 witness interviews over the course of this investigation,

---

[4] If Special Agent Luca is somehow qualified to testify about the perceptions of other market participants, that expertise has not been disclosed.

additional interviews in connection with the DOJ's larger investigation of precious metals trading, and countless others during his nine years with the FBI.

### C. Special Agent Luca Is Not Qualified To Give The Proffered Expert Testimony

Special Agent Luca lacks the relevant experience to testify about how high frequency trading firms or other market participants interpret visible orders or the meaning of shorthand terms in electronic chat messages. *See Estate of Stuller v. United States*, 811 F.3d 890, 895-96 (7th Cir. 2016) (noting that Rule 702, "requires an expert's testimony to have 'a reliable basis in the knowledge and experience of [the relevant] discipline'" (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). Special Agent Luca only traded precious metals for two to three years on a two-person desk in New York, at a time when high frequency trading was not yet fully developed. *See* Ex. A at 3; *Flotron* Dkt. 229, Tr. 45:12-19; 48:12-20; 85:25-86:1. The government has not disclosed any particular expertise in high frequency trading or admissible basis for specialized knowledge of trading terms beyond what he has heard during interviews with potential government witnesses.

### CONCLUSION

For the foregoing reasons, this Court should exclude Special Agent Luca's testimony.

Dated: August 7, 2020                                          Respectfully submitted,

*/s/ Roger A. Burlingame*                              */s/ Michael G. McGovern*
                                                                       Michael G. McGovern (*pro hac vice*)
Roger A. Burlingame                                     Helen Gugel (*pro hac vice*)
Matthew L. Mazur (*pro hac vice*)              Megan A. McEntee (*pro hac vice*)
Lauren A. Bowman *(pro hac vice)*             Ropes & Gray LLP
Dechert LLP                                                    1211 Avenue of the Americas
160 Queen Victoria Street                             New York, NY 10036
London EC4V 4QQ                                       Telephone: (212) 596-9000
United Kingdom                                            michael.mcgovern@ropesgray.com
Phone: +44 20 7184 7000                             helen.gugel@ropesgray.com
Roger.Burlingame@dechert.com              megan.mcentee@ropesgray.com
Matthew.Mazur@dechert.com
Lauren.Bowman@dechert.com

Christopher Burrichter
Dechert LLP
35 West Wacker Drive, Suite 3400
Chicago IL 60601
Telephone: (312) 646-5800
Christopher.Burrichter@dechert.com

***Attorneys for James Vorley***

Aaron M. Katz (*pro hac vice*)
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
aaron.katz@ropesgray.com

Laura G. Hoey
Ropes & Gray LLP
191 North Wacker Drive
Chicago, IL 60606
Telephone: (312) 845-1318
laura.hoey@ropesgray.com

***Attorneys for Cedric Chanu***

## CERTIFICATE OF SERVICE

I, Roger A. Burlingame, hereby certify that on August 7, 2020, the foregoing was filed via the Court's CM/ECF system, which will automatically serve and send notification of such filing to all registered attorneys of record.

*/s/ Roger A. Burlingame*
Roger A. Burlingame
