UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES VORLEY and<br>CEDRIC CHANU,<br><br>Defendants. | No. 18 CR 35<br><br>Judge John J. Tharp, Jr. |

**GOVERNMENT'S OPPOSITION TO DEFENDANT CEDRIC CHANU'S MOTION TO EXCLUDE OUT-OF-COURT STATEMENT BY CO-DEFENDANT JAMES VORLEY**

Defendant Cedric Chanu has filed a motion pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), and *Crawford v. Washington*, 541 U.S. 36 (2004), to exclude a passing reference to him from an audio recording the United States expects to introduce at trial.[1] *See* Doc. No. 293 ("Mot."). The audio recording is of an interview of Chanu's co-defendant, James Vorley, by Deutsche Bank personnel in 2015. During the interview, Vorley stated, "there is nothing that appears in my trade data that I would not expect to show up in the trade data of all of my colleagues or of other traders in the [inaudible] room," and that he would not expect anything "unique to my activity compared to that of my colleagues, such as Eric Parker, Edward Bases, Cedric Chanu, Adam Farthing, David Liew."[2] That is the sole

---

[1] The government perceives no reason why this motion arrived at the eleventh hour. The government has made no secret of its intention to use Vorley's recorded interview statements at trial, and the recording was included on the government's exhibit list on July 31, 2020. Indeed, the parties devoted significant time last spring to briefing the admissibility of the recording. That would have been an opportune time for Chanu to raise any arguments under *Crawford* and *Bruton* or otherwise. Moreover, the government sent both defendants a transcript of Vorley's recorded interview on August 26, 2020, and asked if they had any objections. Neither defendant responded. Instead, Chanu filed the instant motion.

[2] In connection with a separate motion, the defendants provided the Court with a copy of the audio file of the interview. Vorley's statement referencing Chanu occurs at the timestamp 55:39 (identifying him among traders) and 56:13 (spelling his name).

reference to Chanu (other than Vorley confirming the spelling of Chanu's last name) the jury will hear in the recording. Because Chanu's reliance on *Bruton* and *Crawford* is misplaced, the Court should deny his motion.

*Bruton* stands for the proposition that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987). But an extra-judicial statement that is not "powerfully incriminating" of a co-defendant does not implicate *Bruton. See United States v. Volpendesto*, 746 F.3d 273, 291 (7th Cir. 2014); *United States v. Briscoe*, 896 F.2d 1476, 1501 (7th Cir. 1990). And a confession that does not facially incriminate a co-defendant does not run afoul of *Bruton* merely because it later becomes incriminating when linked with other evidence introduced at trial. *See Richardson*, 481 U.S. at 208; *United States v. Souffront*, 338 F.3d 809, 830 (7th Cir. 2003).

In *Crawford*, the Supreme Court held that the right to confrontation bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53–54. "While the Court has not comprehensively defined the term 'testimonial,' it stated in *Crawford* that it extends to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. The Court also added that evidence is 'testimonial' in nature when given in formal pleadings, such as affidavits, declarations, or confessions, or . . . when made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial." *United States v. Watson*, 525 F.3d 583, 589 (7th Cir. 2008) (internal quotes and citations omitted); *see also United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006) ("While

*Crawford* did not firmly define the word 'testimonial' for every situation, examples and other guidance from the Supreme Court indicate that the term pertains to statements that a declarant makes in anticipation of or with an eye toward a criminal prosecution." ((internal quotes omitted)). But even "aside from the testimonial versus nontestimonial issue, a crucial aspect of *Crawford* is that it only covers hearsay, *i.e.*, out-of-court statements offered in evidence to prove the truth of the matter asserted." *Tolliver*, 454 F.3d at 666 (internal quotes omitted).

The circumstances here are nothing like those in *Bruton*. Vorley did not confess to any crimes during his interview; on the contrary, he denied any misconduct. Nor did Vorley state or even suggest that Chanu had committed any crimes or traded improperly. In fact, his lone reference to Chanu was that Chanu (and other traders at Deutsche Bank) traded in a similar fashion to Vorley. That unadorned statement does not facially incriminate Vorley *or* Chanu, and thus it comes nowhere near implicating *Bruton*. *See Briscoe*, 896 F.2d at 1502 (distinguishing *Bruton*). That conclusion remains true even if Vorley's statement ultimately is coupled during trial with other evidence that shows Vorley's trading was unlawful. *See Richardson*, 481 U.S. at 208.

The defendant's barebones *Crawford* argument fares little better. Chanu cites *Crawford* for the proposition that the "government may not admit an incriminating testimonial out-of-court statement against a defendant unless such defendant is afforded an opportunity for cross-examination." Mot. at 2. But again, Vorley's reference to Chanu was *not* incriminating on its face, and in any event, it would be a stretch to characterize Vorley's interview statements to his employer in 2015 as "testimonial" insofar as they were not made "in anticipation of or with an eye toward a criminal prosecution," *Tolliver*, 454 F.3d at 665,

3

or otherwise "under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial," *Watson*, 525 F.3d at 589. Indeed, although Chanu asserts without support that the interview setting was akin to a "police interrogation," Mot. at 2, he does not even attempt to explain how, and the Court has already highlighted the important differences between Vorley's interview and a compelled interrogation, *see* Doc. No. 185. Nor was Vorley's statement "contained in any formal court document, or given as evidence at another proceeding." *Watson*, 525 F.3d at 589 (internal citation omitted). And under the circumstances—a voluntary interview with his employer, without any prospect of prosecution on the horizon—it would not have been reasonable for Vorley to believe his statement "would be preserved for later use at a trial." *Id.*

But even setting aside these points, Chanu's *Crawford* argument falters because Vorley's reference to Chanu is not being offered to prove the truth of the matter asserted, namely that Vorley's trading was similar to Chanu's. Instead, the reference to Chanu (and other Deutsche Bank traders) in Vorley's recorded interview is simply to illustrate Vorley's deflections when questioned about his own trading and to provide context for his (false) denials. *See Tolliver*, 454 F.3d at 666. ("Statements providing context for other admissible statements are not hearsay because they are not offered for their truth."). "As a result, the admission of such context evidence does not offend the Confrontation Clause because the declarant is not a witness against the accused." *Id.* Hence, the Court can easily deny Chanu's motion.

All that said, the government is amenable to exploring a solution that would limit any possible risk from Vorley's brief reference to Chanu in his recorded interview. If defense

4

counsel had simply called the government in advance of filing their motion, the government would have offered to redact the passing reference to Chanu. To eliminate the issue, the government remains willing to do that and would not object to a limiting instruction if the Court believes one is necessary. *See Souffront*, 338 F.3d at 830 ("If a proper limiting instruction is given to the jury, a redacted statement which incriminates a defendant only in conjunction with other evidence in the case does not violate *Bruton*."). But the government disagrees with Chanu's assertion that redacting his name would improperly draw attention to its absence. *See* Mot. at 3. Indeed, in the context of a lengthy recorded interview, this lone, fleeting reference is unlikely to attract the jury's notice one way or the other.

Respectfully submitted,

ROBERT A. ZINK
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

By: */s/ Avi Perry*
Brian Young, Deputy Chief
Avi Perry, Assistant Chief
Leslie S. Garthwaite, Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
Telephone: (202) 616-4619
Email: avi.perry@usdoj.gov

Dated: September 1, 2020

## CERTIFICATE OF SERVICE

  I certify that by electronically filing a copy of the foregoing brief through the court's electronic docketing system on September 1, 2020, I caused the motion to be filed on the defendants' counsel of record, who are ECF Filing Users and are served electronically by the Notice of Docket Activity.

            */s/ Avi Perry*
            Avi Perry
            Assistant Chief, Fraud Section