UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES VORLEY and<br>CEDRIC CHANU,<br><br>Defendants. | No. 18 CR 35<br><br>Judge John J. Tharp, Jr. |

## **OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE RULE 1006 EXHIBITS**

The defendants' motion correctly cites the standard for admitting summary exhibits, but the defendants misapply that standard to the government's proposed Exhibits 1, 74 and 75.[1] Because the government's exhibits fit within the rule for summaries, the Court should deny the motion. The Court also has separate grounds to deny the motion because it is untimely. Although the deadline for producing summary exhibits was September 1, 2020, the government produced *all* of the summary charts at issue on August 5, 2020, prior to the Court's August 7 deadline for motions *in limine*. *See* Ex. 1. The objective of this early disclosure was to avoid exactly what is happening now: an eve-of-trial challenge to this important evidence. With the government's summaries in hand, the defendants filed their other motions *in limine* on August 7. Their motions specifically sought to preclude the government from using terms like "spoof," "fraudulent," or "manipulate" in its summary exhibits, *see* Doc. No. 270 at 2, but did not raise the issues addressed in this filing. This is not the first time the defense has filed an untimely motion to preclude evidence of which it had long been aware, nor the first time the defense has taken a seriatim approach to evidentiary

---

[1] These exhibits at issue are former GX 1, GX 32 and GX 33. The government herein has referenced its exhibits by the JERS numbering system.

issues. *See* Doc. Nos. 292 and 293 (seeking to preclude or limit use of audio recording disclosed last year). Rather than preparing their case consistent with the schedule set by the Court (and followed by the government), it appears the defendants either are filing new motions as ideas occur to them or filing untimely motions for tactical reasons.[2] In any case, the fact that it took the defendants a month to either spot or raise these issues speaks volumes about the merits of their position.

Rule 1006 permits the use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." To be admissible, a summary exhibit must be accurate in what it is summarizing and cannot "make arguments about the inferences the jury should draw from them." *United States v. Gallardo*, No. 13 CR 660, 2015 WL 832287, at *7 (N.D. Ill. Feb. 25, 2015).

Defendants raise three complaints about the appearance of certain government exhibits. The first relates to Government Exhibit 1, which summarizes and visually depicts trade data for the 61 episodes the government disclosed for its case-in-chief. *See* Ex. A to Defendants' Motion. The episode number appears on the top right corner of each chart. On these charts, the shaded light blue line represents the bid-offer spread, and the thin solid blue line represents the mid-price. These move over time as prices go up and down. The defendants' iceberg orders are depicted in green and with parentheses around the order quantity. Fully-displayed (*i.e.*, visible) orders are in red. Circles represent order placements; triangles show executions (upward triangles for sales, and downward triangles for

---

[2] The charts at issue are an important part of the government's case and, in the absence of an objection, the government used these charts to prepare for trial. Making adjustments at this late hour would be massively burdensome.

purchases); and an × means a cancelation. There are annotations at the top and bottom to show which trader is on the buy and sell sides, as well as an initial before each order to show who placed it. Where there are two or more orders of the same quantity and the same price that are placed in quick succession, the charts indicate, *e.g.*, V6x10 to mean that Vorley placed 6 orders for 10-contracts each.

The episode charts also use text boxes with neutral terms to summarize certain data points. The government deliberately did not include any terms the defendants objected to in their prior filings; there are no references to "fraudulent," "spoof," or "primary" orders in the charts. Rather, the text accurately summarizes voluminous data that the jury otherwise would have to sift through and calculate itself (*e.g.*, "order to buy 100 contracts ($8,173,000) / Active for 1.116 seconds"), and identifies the number of contracts executed at various times within each episode (*e.g.*, "buys final 4 contracts while sell orders active"). The defendants do not dispute the accuracy of these annotations, and it is not improper for the charts to summarize some, but not all, of the underlying data (otherwise it would not be a summary), or for different charts to reflect different data points. *See United States v. Swanquist*, 161 F.3d 1064 (7th Cir. 1998) ("A party is not obligated, however, to include within its charts or summaries its opponent's version of the facts"). Nor do the charts contain improper conclusions, arguments, or inferences; if the defendants wish to highlight other aspects of the data or suggest a contrary view, they are free to do so on cross-examination. *See United States v. Means*, 695 F.2d 811, 817 (5th Cir. 1983) (permitting Rule 1006 summary exhibit even though its captions and labels reflected government's assumptions).[3] This precise sort of

---

[3] In *Mears*, the court found there was no prejudice because the defendants had the chance to cross examine the witness who introduced the charts and because there was an instruction to the jury that they were to make the ultimate decision about what weight to assign to the

summary has previously been permitted even over a defendant's content-based objections. *See United States v. Bentley*, 825 F.2d 1104, 1108 (7th Cir. 1987) (defendant's expectation to offer evidence critiquing charts does not affect their admissibility). In fact, substantially similar charts were admitted into evidence in the *Flotron* case over the defendant's objection. *See* Ex. 2 at 5-6. In that case, the district judge noted that the defendant (like Vorley and Chanu) had not identified "any factual inaccuracy" in the government's summary exhibits, and found that in view of the:

> immense volume and complexity of the underlying trading data, a summary compilation of the transaction data may be important to the jury's ability to understand the evidence and evaluation of the timing and details of trading activity. All summary evidence is inherently selective in terms of what data is included, and I do not agree with defendant's argument that the Government's decision to select certain series of transactions amounts to improper "cherry picking" that makes the summaries misleading or otherwise inadmissible. Defendant's concerns go to weight and not admissibility.

*Id*. The same rationale applies here. Because the government's charts accurately summarize voluminous admissible evidence, they are proper exhibits under Rule 1006.

*Second*, the defendants object to the fact that excerpts of e-communications are overlaid onto the trade data summarized on certain charts. Given the different types of evidence and different time zones, this overlay is likely to be helpful to the jury's understanding of the case. Again, the defendants do not challenge the accuracy of these exhibits. The mere fact that the government has combined two kinds of admissible evidence into a single summary exhibit does not render it argumentative or otherwise inadmissible. If the defendants wish to suggest on cross-examination or otherwise that the excerpted chats

---

evidence. 695 F.2d at 817. The government notes that the draft jury instructions circulated by the Court here already contain such an instruction, which the government does not oppose.

were unconnected to the trade data, they remain free to do so at trial. But for the reasons stated above, these exhibits also should be permitted.

*Third*, the defendants object to Exhibits 74 and 75 as containing the government expert's conclusions (they still do not challenge the accuracy of the exhibit). But the fact that an expert has prepared calculations that are reflected in the exhibit do not render them impermissibly argumentative. In fact, this is precisely what Rule 1006 contemplates would be admitted under the rule. *See* Fed. R. Evid. 1006 (summary exhibits can include "calculation[s] to prove the content of voluminous writings"). While true, as the defendants argue, that "each chart makes a point, and in each instance, it is the expert's point," because they summarize accurate calculations drawn from admissible trade data, these are proper summary exhibits.

                                            Respectfully submitted,

                                            ROBERT A. ZINK
                                            Chief
                                            Criminal Division, Fraud Section
                                            U.S. Department of Justice

By:      */s/ Avi Perry*
            Brian Young, Deputy Chief
            Avi Perry, Assistant Chief
            Leslie S. Garthwaite, Trial Attorney
            Criminal Division, Fraud Section
            U.S. Department of Justice
            Telephone: (202) 616-4619
            Email: avi.perry@usdoj.gov

Dated: September 5, 2020

**CERTIFICATE OF SERVICE**

      I certify that by electronically filing a copy of the foregoing brief through the court's electronic docketing system on September 5, 2020, I caused the motion to be filed on the defendants' counsel of record, who are ECF Filing Users and are served electronically by the Notice of Docket Activity.

                                */s/ Avi Perry*
                                Avi Perry
                                Assistant Chief, Fraud Section