**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 CR 00035 |
| | ) | Judge John J. Tharp, Jr. |
| v. | ) | |
| | ) | |
| JAMES VORLEY and | ) | |
| CEDRIC CHANU, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Defendants James Vorley and Cedric Chanu seek to compel the government to produce information relating to allegations of prosecutorial misconduct in connection with the filing of an official request to the United Kingdom for evidence located in that country. The gist of the allegation is that prosecutors filed the request not to obtain evidence for use in the investigation and prosecution of this case but to take advantage of the tolling of the statute of limitations that such a request provides. But because there is no materiality threshold necessary to trigger the tolling provision and because the defendants have not been prejudiced by application of the tolling provision in any event, the defendants' motion is denied.

## I.  BACKGROUND

The defendants are charged in a superseding indictment (SI) with conspiring to commit and committing wire fraud affecting a financial institution (Deutsche Bank AG, their then-employer) between March 2008 and July 2013. The specifics of the charges are not material to the resolution of this motion but in general terms, the SI charges that the defendants (along with a third Deutsche Bank trader, David Liew, who has been charged separately) engaged in a scheme to manipulate the market price of precious metals futures contracts by means of spoofing

orders—that is, orders that they intended to cancel before the orders could be executed—that moved the market in the direction of other orders that the defendants had placed in anticipation of the price movement that the spoofing orders would cause and making it more likely that those orders would be filled. The scheme is alleged to have affected Deutsche Bank by resulting in a $30 million civil penalty imposed by the CFTC in January 2018; forcing the bank to incur costs of investigation and litigation associated with the scheme; exposing it to the risk that spoofing orders—by definition, orders that were not intended to be executed—would be executed before they could be canceled; and damaging its reputation. In addition to the conspiracy charge (18 U.S.C. § 1349), the SI includes 16 counts of wire fraud (18 U.S.C. § 1343), each of which is alleged to have affected Deutsche Bank. The wire transmissions on which these counts are based took place from February 12, 2010 to July 9, 2013.

The procedural history of this prosecution is more germane to the present motion than the allegations about the defendants' conduct. The government's investigation in this case dates back at least to November 2014, when the Department of Justice issued a request for documents to Deutsche Bank. ECF No. 146, Ex. H. On December 9, 2016, the government made an official request to the United Kingdom, pursuant to a mutual legal assistance treaty (MLAT) between the two countries, that it compel the production of various documents from a number of financial institutions located in London, including Deutsche Bank. Shortly thereafter, on December 19, 2016, the government sought an order pursuant to 18 U.S.C. § 3292 suspending the running of the statute of limitations for offenses arising out of the grand jury's investigation. Briefly described, § 3292 effectively provides an extension of the relevant statutes of limitations of up to three years when the government makes an official request for evidence from a foreign government and it reasonably appears that evidence relating to the offenses under investigation is

2

located in the country to which the request was made. The government's application was approved by Chief Judge Rubén Castillo on December 20, 2016.

This case was initiated about 13 months later, on January 19, 2018, when the government filed a criminal complaint charging the defendants with violations of several criminal statutes in the course of engaging in market manipulation by means of spoofing trades. ECF No. 1. Specifically, the complaint charged the defendants with conspiracy to commit spoofing (18 U.S.C. § 371), spoofing (7 U.S.C. §§ 6c(a)(5)(C) and 13(a)(2)), conspiracy to commit wire fraud and commodities fraud (18 U.S.C. § 1349), wire fraud (18 U.S.C. § 1343), and commodities fraud (18 U.S.C. § 1348). The Complaint alleged that the conduct underlying these violations occurred from May 2008 through March 2015.

The complaint was supported by an affidavit of an FBI agent involved in the investigation. In addition to generally describing the operation of electronic trading on the futures market and the mechanics of the alleged spoofing scheme, the affidavit detailed facts relating to specific alleged spoofing activity by the defendants, including eight episodes occurring from January 12, 2012 to July 9, 2013 involving trades by Vorley only (¶¶ 24-26) and seven episodes from August 13, 2012 to May 23, 2013 by Chanu only (¶¶ 35-36). The affidavit also stated that between December 2008 and June 2013, Vorley and Chanu participated in over one hundred instances of coordinated spoofing together (¶¶ 27, 37).

The complaint made no representations about the statutes of limitations applicable to the alleged violations. It did advise, however, that on December 20, 2016, the United States had obtained an order pursuant to § 3292 tolling the applicable statutes of limitation for up to three years. Complaint Affidavit, ECF No. 1, at 3 n.2. The government concedes, however, that "[a]s charged in the Complaint," commodities fraud had a statute of limitations of six years and that

the limitations period applicable to the remaining violations was five years. Even putting aside the tolling order, then, the offenses charged in the complaint were all supported, in part, by allegations of conduct that occurred within the applicable statutes of limitations.

At the time the complaint was filed, Mr. Vorley resided in London and Mr. Chanu in France and the United Arab Emirates ("UAE"). Negotiations concerning the defendants' appearance on the charges ensued. According to the defendants, after they learned of the charges against them, counsel for the defendants advised the government that the defendants were prepared to "waive extradition" and fly to Chicago to face the charges. The government disputes this, maintaining that Vorley first sought to defer any potential surrender date until after the birth of his child in March. For its part, the government then requested that the defendants defer their self-surrenders until after May because the AUSAs assigned to this case were going to be trying a case in New Jersey. The government asserts, and the defendants have not disputed, that additional delay was occasioned by the request of defendants' counsel to meet with government officials in an effort to convince them not to go forward with an indictment. Ultimately, although bench warrants were issued when the complaint was filed, the defendants were never arrested on the charges set forth in the Complaint and no court proceedings on the Complaint were ever conducted.

A grand jury returned an indictment against the defendants on July 24, 2018. The indictment charged the defendants with conspiracy to commit wire fraud affecting a financial institution during the period from December 2009 through November 2011 and two substantive counts of wire fraud affecting a financial institution (one as to each defendant). Because the statute of limitations applicable to wire fraud affecting a financial institution is ten years, none of these charges would have been time-barred even if the government had not obtained the tolling

order pursuant to § 3292. The indictment did not include charges based on the violations of other statutes that had been charged in the complaint, even though such charges would have been timely based on application of the MLAT tolling provision.

Following indictment, the defendants self-surrendered and appeared for arraignment. Vorley was arraigned on August 13, 2018; Chanu on September 25, 2018. The defendants moved to dismiss the indictment, asserting that the crime of wire fraud requires an express false statement. In their motion, the defendants asserted that the government had pared back the scope of the alleged conspiracy and spoofing conduct because Deutsche Bank had implemented a compliance monitoring program in December 2011 that had cleared as compliant "many of the same trades that the government initially alleged in this case were willful violations." ECF No. 76 at 4. In other words the defendants asserted that the government brought new charges with a longer limitations period because it recognized that it would have difficulty proving violations after the bank implemented its compliance program in December 2011. To enable them to reach that far back, the defendants asserted, the government had to charge wire fraud "affecting a financial institution" with its 10-year limitations period.

The defendants maintain that the precious metals spoofing investigation was led by Sarah Hall, an attorney with the Fraud Section of DOJ, until she was "summarily removed from the case," ECF No. 171 at 2, in the summer of 2018. Ms. Hall has never appeared in this case. At the outset of this case, the government was represented by two trial attorneys from the Department of Justice, Corey E. Jacobs (ECF No. 16) and Michael T. O'Neil (ECF No. 2); see also ECF No. 61 (transcript of first appearance before Judge Tharp).

Before indictment, the government began providing discovery materials at least to counsel for Mr. Vorley. These materials included the tolling order, but not the application for

5

that order. Counsel for defendant Vorley first requested production of the application on September 24, 2018 (Ex. F) and again on October 4, 2018 (Ex. G). The defendants maintain that the request for the application was prompted by Ms. Hall's "sudden departure" and questions about "the need for an MLAT" when all evidence in the United Kingdom was in the possession of government cooperator Deutsche Bank, ECF No. 171 at 8, though the written requests do not reference either concern. At the first hearing before this Court, the government affirmed, in response to comments by defense counsel, that the government did not intend to rely on the tolling order to defeat any statute of limitations defense that the defendants might raise as to the indictment or any superseding indictment. ECF No. 61 at 7:5-21.

At some point while the motion to dismiss was pending, two new prosecutors from the Fraud Section of DOJ, Bryan Young and Avi Perry, took over the prosecution of this case. In addition, another prosecutor, Ankush Khardori, appeared on the government's response brief to the amici briefs filed on the motion. ECF No. 111. After the Court denied the defendants' motion to dismiss, Mr. Perry advised the Court at a status hearing that the government intended to file a superseding indictment against the defendants that would expand the duration of the charged conspiracy and add substantive wire fraud counts. As Mr. Perry explained it, the government's rationale for superseding was in part a response to the defendants' claim that it had not charged post-2011 conduct because DB's compliance program had "cleared" hundreds of trades by the defendants and to add instances of spoofing by the defendants individually.

According to the defendants' brief (ECF No. 171), shortly thereafter, on November 16, 2019, defense counsel again requested the tolling order application from the new trial team, again without success.

On November 26, 2019, a grand jury returned a superseding indictment against the defendants. The superseding indictment expanded the duration of the charged conspiracy in both directions, pushing back the beginning of the charged conspiracy to no later than March 2008 and charging that the conspiracy continued at least until July 2013. The SI also increased the number of substantive wire fraud charges from two to sixteen (two joint; six Vorley; eight Chanu).

On February 2, 2020, a newspaper reported that Ankush Khardori had filed a memorandum with the Department of Justice (DOJ) Inspector General alleging that DOJ prosecutors engaged in a deliberate effort to deceive judges into granting MLAT requests in two different investigations on the false premise that DOJ "had, in fact, made its requests for foreign evidence because of a legitimate interest in obtaining that evidence" when "[t]he real purpose of the requests and the application to the judge was to buy more time to build a case." Mem. in Support, ECF No. 171, Ex. C at 2. The newspaper also reported that Mr. Khardori had filed this memorandum just before resigning from the DOJ and that Khardori was the subject of a separate investigation by the DOJ IG concerning alleged leaks to news media about another DOJ prosecution.

According to the news report, one of the two MLAT applications that Mr. Khardori identified involved allegations of spoofing by former traders at Bank of America Merrill Lynch. Mr. Khardori reportedly was assigned to that case after the tolling order had been obtained; after being assigned to the case, according to the news reports, Khardori and others "decided against relying on the MLAT because it appeared to have been used to buy more time for the government." *Id.* at 5. The Court understands that case to have been *United States v. Bases et al.*, which is also pending in this district (No. 18 CR 48). Review of filings in the *Bases* case reveals

that the tolling order issued in that case is the same tolling order at issue in this case. *Compare* ECF No. 61, Ex. B with ECF (18 CR 48); *see also* Reply, ECF No. 200, at 11 (noting that *Bases* case involved "the same pretextual MLAT request").

Citing the news reports concerning Mr. Khardori's allegations, the defendants have filed this motion seeking production of: the tolling order application, memoranda or complaints drafted by Khardori alleging prosecutorial misconduct; materials concerning or evidencing use of MLAT requests to deceive judicial officers into issuing tolling orders; any documents relating to the MLAT request in this case; materials relating to internal investigations arising from Khardori's allegations; and materials regarding defense requests for materials regarding alleged misconduct in connection with MLAT requests.

The government opposes the defendants' motion. In addition, Mr. Khardori has filed a motion to intervene in the case for the purpose of addressing the government's response to the defendants' motion. The government opposes that motion as well; the defendants take no position—other than to say that Mr. Khardori's filings confirm the need for an evidentiary hearing concerning the government's conduct in obtaining the tolling order.

## II.    ANALYSIS

The motion before the Court is a motion to compel discovery. The defendants maintain that they are entitled to discovery concerning the government's conduct in obtaining the tolling order because they have provided a colorable showing that in applying for the tolling order the government "deceived" the Court about its need for the evidence sought by the MLAT. As such, they maintain, the discovery they seek can reasonably be expected to provide a basis for dismissal of the superseding indictment on the grounds of prosecutorial misconduct and preindictment delay. They also contend that the requested evidence will support a key defense at

trial—namely, that the government attempted to shoehorn alleged "spoofing" into the wire fraud statute to cover up its own misconduct.

As an initial matter, it is plain that the government could not have deceived the Court about the need for the evidence sought by the MLAT because the statute requires no showing of need and the application itself (which the Court has reviewed) makes no representation about the government's need for that evidence. The materiality of the evidence sought is simply not a relevant factor under the tolling statute; absent a misrepresentation about the location of the evidence or the submission of an official request, there is nothing to misrepresent in the context of a § 3292 tolling application.

Even if the Court were to find, however, that the government's filing of the MLAT was "nakedly pretextual"—meaning that it was made solely for the purpose of extending the applicable statutes of limitations—that finding would not lead where the defendants suggest. It would not provide the defendants with any viable argument to dismiss the indictment because the defendants cannot demonstrate that a misrepresentation about the need for the MLAT caused them any actual prejudice. The government is not relying on the tolling order to render timely any of the charges the defendants are facing in the superseding indictment. Nor would it provide a defense at trial, because the subjective motives of the government's attorneys in prosecuting a case are not relevant to the question of whether the defendants are guilty of the crimes charged. Accordingly, there is no need to grant the defendants' motion; ultimately, the conduct at issue is not germane to the prosecution or defense of this case.[1]

---

[1] If government prosecutors violated DOJ policies in seeking the tolling order, that is an issue for the DOJ Inspector General to address.

9

**A.      No pretext: A tolling application does not make an implied representation about the materiality of, or need for, the evidence sought by the MLAT.**

The defendants' motion to compel discovery of information relating to MLAT requests by DOJ rests on the premise that an application for tolling pursuant to § 3292(a) carries with it a representation, whether express or implied, that the grand jury evidence sought has some degree of materiality to the conduct under investigation—in other words, that the government has some specific need for the evidence sought. The statute imposes no such requirement, however. Section 3292 reads in pertinent part:

> (a)(1) Upon application of the United States, filed before return of an Indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country....
>
> (b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.
>
> (c) The total of all periods of suspension under this section with respect to an offense—
>
> (1) shall not exceed three years; and
>
> (2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

Section 3292 "therefore requires a district court to suspend the running of a statute of limitations upon an appropriate application showing: (1) that evidence of an offense being investigated by a grand jury is in a foreign country; and (2) that such evidence has been officially

requested." *United States v. Lyttle*, 667 F.3d 220, 224 (2d Cir. 2012). The text says nothing about establishing the materiality of the evidence sought, or confirming the urgency with which it is needed, or demonstrating that the government moved with some level of requisite diligence in making the official request. Rather than authorize district courts to exercise discretion in assessing whether an application for foreign evidence warrants an extension of the statute of limitation, the statute ***requires*** district courts to toll statutes of limitations upon any showing that an official request has been made for evidence reasonably believed to be in a foreign country. The only evaluation the courts must—or can—make regarding the adequacy of the request is that the government has supported its assertion that an official request has been made by a preponderance of the evidence and that it has met the same evidentiary requirement in showing that there is a reasonable basis to believe that the evidence sought is located within the country as to which the official request was made.

This is not a controversial point; virtually every court to address the argument that tolling pursuant to § 3292(a) depends on a showing that the government demonstrate some need to obtain the evidence sought from the foreign country has rejected it. In *Lyttle*, for example, the Second Circuit rejected the defendant's argument that an MLAT tolling order was improper because the evidence could have been obtained by subpoena, explaining:

> nothing in § 3292 suggests that the foreign evidence must be obtainable ***only*** through diplomatic channels for the statute of limitations to be suspended. Rather, the plain text of § 3292 requires the district court, upon proper application, to suspend the statute of limitations when the government chooses to pursue foreign evidence through an official diplomatic request, ***regardless whether it might have been able to obtain the foreign evidence by other means***."

*Id.* at 224-25 (initial emphasis in original; other emphasis added).

The Second Circuit similarly rejected the argument that evidence must be "pivotal" to the prosecution in order to warrant tolling, observing that the argument is antithetical to the operation of a grand jury:

> Grand juries are not required to vote on indictments as soon as they have probable cause: "A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" *Branzburg v. Hayes*, 408 U.S. 665, 701, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972) (quoting *United States v. Stone*, 429 F.2d 138, 140 (2d Cir.1970)); *see also United States v. R. Enters., Inc.*, 498 U.S. 292, 297, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991) (same); *Blair v. United States*, 250 U.S. 273, 282, 39 S. Ct. 468, 63 L. Ed. 979 (1919) (same). Section 3292 does not alter this long-standing precept, but rather facilitates it by providing a means to suspend the statute of limitations while evidence is sought from abroad.

*Id.* at 225.

The other courts of appeals to have addressed the question have taken the same view. In *United States v. Broughton*, 689 F.3d 1260, 1273 (11th Cir. 2012), the Third Circuit cited *Lyttle* in holding that a "district court's inquiry [under § 3292] is constrained by the boundaries of the two elements [official request and evidence located in the foreign country] required by Section 3292," and endorsed the proposition that tolling under § 3293(a) does not require that the evidence sought is either non-cumulative nor pivotal to the grand jury's investigation." And in *United States v. DeGeorge*, 380 F.3d 1203, 1213 (9th Cir. 2004), the Ninth Circuit rejected the argument that tolling under § 3292 is permissible only if the government does not already have the evidence and the evidence is "material or otherwise essential" to the charges as "entirely without textual support in the statute or in the reality of grand jury investigations. . . . Regardless of whether it would be good policy to impose the requirements urged by [Defendant] before allowing suspension of the statute of limitations, Congress did not do so."

12

Neither of the defendants' two briefs in support of their motion addresses the statutory language of § 3292(a). Rather than read the statute that sets forth the information the government is required to provide to support a tolling application, the defendants simply assume that it is misconduct for a prosecutor to seek a tolling order if he or she does not believe that the evidence sought meets some undefined threshold of materiality. They cite "no authority for the proposition that whether the statute of limitations can be suspended depends on what evidence the Government already has or whether it has sufficient evidence to bring a charge. The statute's language presents no such requirement: it only refers to 'evidence of an offense.'" *United States v. Michel*, No. CR 19-148-1 (CKK), 2019 WL 5797669, at *10 (D.D.C. Nov. 6, 2019); *see also*, *e.g.*, *United States v. Chen*, 2014 WL 5307518, *13 (N.D. Ga. 2014) (finding "no case law supporting [defendant's] argument that a pretextual MLAT request voids any otherwise valid request"). In the absence of any authority adopting the defendants' view that a prosecutor cannot seek tolling under § 3292 unless there is a basis to conclude that the evidence sought will be material to the investigation, this Court declines their implicit invitation to engraft such a requirement onto the tolling statute.

And how would such a requirement work anyway? How material must the evidence sought be? And at what point in an investigation would materiality be assessed? How cumulative can evidence be to remain material? How diligent must the government be in pursuing the evidence and bringing charges? At what point would further investigation become pretextual rather than thorough? Is it prosecutorial misconduct to take a "belts-and-suspenders" approach to ensuring that all potentially relevant evidence has been collected? Evidence gathering and assessment, moreover, is a process that evolves during the course of an investigation; by definition, the government is seeking to determine whether crimes have been committed but may

well be barking up the wrong trees in searching for the answers. Investigations often take unexpected turns and twists; it would be quite unrealistic to expect prosecutors to definitively assess the materiality of evidence before determining what if any charges the grand jury will include in an indictment. Much investigative work, moreover, is intended to ***exclude*** conduct and theories from consideration; that is to say, to determine that certain evidence is not material to the investigation. It would be grossly unwarranted to infer from the fact that evidence gathered during the investigation did not turn out to be material that a tolling application was pretextual.

The text of § 3292 reflects a Congressional judgment that these sorts of practical difficulties in assessing materiality during the investigatory phase of a prosecution do not lend themselves to judicial oversight and require giving investigators substantial discretion in assessing what evidence merits exploration and what does not. Congress eschewed any inquiry into the government's need for evidence abroad, or its diligence in seeking that evidence, preferring instead to circumscribe prosecutorial discretion by limiting the length of the extension permitted. The limited statutory criteria for tolling the statute of limitations based on an MLAT request also recognizes that the decision to impose on foreign governments by means of official requests for evidence is the province of the Executive branch, not the courts.

The Ninth Circuit's ruling in *United States v. Hagege*, 437 F.3d 943 (9th Cir. 2006) recognizes these Congressional judgments. There, the defendant challenged the propriety of a tolling order extension where the government's official request for the evidence sought did not seek the immediate production of the evidence but included instead a provision that provided for the future delivery of necessary certifications of the evidence. Acknowledging that "[b]y making an official request for certified documents with a future delivery provision, the government is able to extend the suspension period longer than had it insisted upon immediate delivery of the

certified documents," the Ninth Circuit nevertheless rejected the defendant's argument, holding

that "§ 3292 does not prohibit this kind of conduct." *Id*. at 955. The Court of Appeals explained:

> Generally speaking, the statute does not regulate the mechanics of
> how the government goes about obtaining foreign evidence. In
> particular, there is nothing in the statute which dictates when the
> government must demand delivery of a certificate of authenticity
> of the foreign documents it has requested. By implication, Congress
> has left these discovery-related matters to the discretion
> of the attorney for the United States. . . . Moreover . . . there is no
> requirement in § 3292 that the government diligently seek
> evidence located in a foreign country since the statute has a built-in
> time limitation on the suspension period. The statute provides that
> the total period of suspension shall in no event exceed three years.
> 18 U.S.C. § 3292(c)(1). Further, the total period of suspension
> cannot exceed six months if final action is taken before the statute
> of limitations would have otherwise expired. 18 U.S.C. §
> 3292(c)(2). In enacting these time limitations, Congress took the
> potential for governmental delay into consideration. The inclusion
> of these time limitations in the suspension statute attempts to create
> a balance between permitting the government to obtain foreign
> evidence and ensuring that the defendant is given the protections of
> predictability and promptness which underlie statutes of
> limitations."

*Id*. (internal citations omitted). *See also United States v. Torres*, 318 F.3d 1058, 1064 (11th Cir.

2003) (Congress implemented two safeguards against unlimited prosecutorial discretion to

extend limitations periods by resort to § 3292 tolling: "First, subsection (c)(1) puts a three-year

limit on the suspension period. . . . Second, if the foreign government takes final action "before

the statute of limitations would otherwise expire," "[s]ubsection (c)(2) limits the period of

suspension to six months."); *Bischel*, 61 F.3d 1429, 1432, 1435 (9th Cir. 1995) ("we decline to

read a diligence requirement into § 3292"; "§ 3292(c) sets a clear point beyond which the

limitations period may not be extended: either three years if there is no "final action" at all, or no

more than six months if there is "final action" within the period.").

There is, then, no merit to the defendants' premise that the government's tolling application worked a fraud upon the Court. An application for a tolling order pursuant to § 3292(a) carries with it no representation, express or implied, about the government's need for the evidence sought, so it could not have deceived the Court about the materiality of the evidence sought.[2] The statute and case law are clear: Congress authorized the extension of statutes of limitation when the government makes an official request for production of evidence located abroad without regard to the government's need for that evidence or its diligence in pursuing that evidence. That may or may not be good policy, but it does not make an application based on a request for evidence that is not "needed"—whatever that means—fraudulent.

In short: there is no "colorable basis" to suggest prosecutorial misconduct in connection with the MLAT request to the United Kingdom or the application for the tolling order permitted by § 3292(a) based on that MLAT request. Accordingly, there is no basis to compel the government to produce information bearing on that process, whether under *Brady* or Rule 16.

### B. The Defendants have not been prejudiced by the tolling order.

According to the defendants' motion, they seek discovery related to the government's conduct in obtaining the tolling order to obtain evidence that will "serve as the basis for motions seeking redress for the deprivation of their constitutional rights, including a motion to dismiss the superseding indictment based on egregious prosecutorial misconduct or prejudicial pre-indictment delay, and could also support a trial defense that the government overreached to

---

[2] The irony of the defendants' argument that the government's application carried with it an implicit but false representation is not lost on the Court. The defendants maintain that their bids and offers carried with them no implicit representations about their intent to fill the orders; the Court denied their motion to dismiss because the question of the defendants' intent in placing the orders presents a fact question that must be resolved at trial. Here, by contrast, the question is one of law, not fact: as a matter of law, a tolling application makes no implicit representation about the government's need for the evidence sought because that question is irrelevant to whether tolling is permitted by the statute.

charge the defendants with wire fraud affecting a financial institution in order to cover up its own misconduct." Plt's Mem., ECF No. 171, at 5-6. As discussed above, however, there was no misconduct in obtaining the MLAT tolling order: the application provided the required information and there were no false representations (or any representations at all) about the materiality of the evidence sought. But it is also clear that dismissal of the SI is not in the cards even if the defendants were right and the prosecutors should be deemed to have made an implicit false representation about their need for the evidence sought by the MLAT.

Let's assume, for purposes of this discussion, that the defendants' concerns accurately reflect what happened. Here is the scenario they have painted: In late 2016, the government issued an MLAT request to the United Kingdom for no purpose other than enabling it to apply for a tolling order pursuant to § 3292(a), effectively extending the statutes of limitation applicable to the charges being considered by up to three years. When others in DOJ thought better of this tactic (whether because they concluded that it was inappropriate or because they wanted to prevent its discovery), they switched gears, disavowed any reliance on the tolling agreement, and obtained an indictment based on charges that have a ten-year limitations period and so were not time-barred.

Contrary to the defendants' contentions, this scenario would not provide a basis to dismiss the indictment, either based on prosecutorial misconduct or on the basis of prejudicial delay. To begin, the tolling order is utterly irrelevant to the charges later returned by the grand jury in the original and superseding indictments. Neither the original indictment nor the superseding indictment relied on the tolling order or the complaint. Even had there been no complaint, or had it made no reference to tolling, the government was free to, and did, seek and obtain indictments on charges that were not included in the complaint and that did not rely on the

tolling order. Tolling order or no, the defendants could have been charged with wire fraud affecting a financial institution; the tolling order permitted the government to do nothing that it was not permitted to do in any event.

The premise of the defendants' argument is that it would be proper to dismiss an indictment based on prosecutorial misconduct. They cite a handful of cases in which indictments have been dismissed based on prosecutorial misconduct, but they miss the mark. Of course indictments may be dismissed when they were procured, in part, through prosecutorial misconduct. But this indictment wasn't. The alleged misconduct has put the government in no better position than it would have been absent the tolling order granted pursuant to § 3292. There are no allegations here that the government obtained evidence by virtue of the tolling agreement that it would not have had otherwise. To the contrary, the implicit claim is that the government didn't need any of the evidence sought by the MLAT.

The closest thing to a claim that the allegedly fraudulent MLAT application facilitated the government's ability to procure charges against the defendants is the defendants' contention that the complaint filed in January 2018 "relied" on the fraudulently obtained tolling order to convince Magistrate Judge Mason that there was probable cause to support the complaint and issue the arrest warrant.[3] But the complaint included evidence of spoofing conduct that was not time-barred, so even if the conduct that would have been time-barred but for the tolling provided by § 3292 had been omitted from the affidavit (unlikely, since the allegations about that conduct

---

[3] The defendants have not identified any case in which an indictment has been dismissed based on prosecutorial misconduct of the sort alleged here: a misrepresentation to the court that enabled the government to establish probable cause to obtain an arrest warrant. When it is discovered that a warrant was obtained by means of false information in an affidavit, the remedy is not dismissal of a later-obtained indictment but invalidation of the warrant and possibly the suppression of evidence obtained based on that warrant. *See generally Franks v. Delaware*, 438 U.S. 154 (1978).

were relevant to show the existence of the conspiracy even if they could not support a stand-alone wire fraud count), there still would have been probable cause to establish violations of federal law sufficient to support the complaint. And, as noted above, the charges levied against the defendants in both the original and the superseding indictments have been timely without reliance on the tolling order.

The defendants assert that the government used the wrongfully procured complaint "to leverage various concessions from the defendants." Reply, ECF No. 200, at 8-10. The only concession identified, however, is that the defendants agreed ***not*** to travel to the United States to appear on the charges in March 2018 to accommodate the availability of government counsel. That is hardly prejudicial (the statute of limitations continued to run, the defendants' were not arrested, and they remained free of any restrictions on their freedom).[4] The defendants', moreover, do not dispute the government's contention that the further delays in the defendants' appearances were to accommodate their requests for further meetings with DOJ in an effort to stave off indictment. Ultimately, the defendants were never arrested on the complaint and surrendered no rights as the result of its filing.[5] Had the government dismissed the complaint (or

---

[4] The declarations of defense counsel imply that the government threatened the defendants with detention if they did not agree to defer their initial appearances, but the fact is that the government sought detention of the defendants notwithstanding their agreement not to appear in March. The defendants don't contend that in doing so the government breached an agreement not to seek detention, so the artful suggestion that the government coerced this concession out of the defendants by promising not to seek detention does not bear scrutiny.

[5] The defendants make a convoluted and inconsistent argument that, having wrongfully procured the complaint and arrest warrants by means of the tolling order to "leverage" concessions by the defendants, the government also prejudiced them by failing to move against them more aggressively due to concerns about the propriety of the tolling order. Plt's Reply, ECF No. 200, at 8-10. If the government had wanted to delay proceedings to "cover up" the alleged problem with the tolling order, it could have simply dismissed the complaint. Given that the defendants were not arrested, the complaint served no purpose; it certainly did not give the government a means of ***delaying*** the case. That the government did not dismiss the complaint is

never filed it), there is no basis to infer that things would have played out any differently: the government could have sought an indictment of the defendants on the very same charges that it did seek their indictment. The filing of the complaint is simply irrelevant to the present charges and its issuance caused the defendants no prejudice.[6]

Defendant's speculation that but for the tolling order, they may not even have been indicted, moreover, makes no sense at all. "Wire fraud affecting a financial institution" was not a charge the government contemplated only after Mr. Khardori's allegations were reported; David Liew, alleged to have been a co-conspirator of the defendants', was charged with wire fraud affecting a financial institution in June 2017, some seven months before the government filed the complaint against defendants Vorley and Chanu. See *United States v. Liew*, No. 17 CR 01, ECF No. 20 (Criminal Information unsealed on June 1, 2017. There is simply no basis to conclude that, absent the tolling order, the government would not have charged the defendants with a crime with which they had already charged the defendants' alleged coconspirator and which included a statute of limitations that made tolling pursuant to § 3292 irrelevant.

Even were the defendants correct that the government's charging decisions have been driven by an assessment that the tolling order was obtained improperly, the only effect that the government's decision not to rely on the tolling order has had on this case is that the defendants are facing ***fewer*** charges than they otherwise would have faced. That is hardly the stuff of dismissed indictments. The defendants will not be heard to complain that they have been

entirely inconsistent with the defendants' theory that the government was seeking to cover up some impropriety in obtaining the tolling order.

[6] The defendants' note that the pendency of charges against them has had a substantial adverse impact on themselves and their families. No doubt. But that impact would not be materially different whether the complaint cited only wire fraud as the defendants' criminal violation. Moreover, the defendants were well aware of the government's investigation before the complaint was filed.

disadvantaged because absent its alleged misconduct, the government might have levied more charges against them.

### C. The Prosecutors' motives are not relevant to a defense on the merits.

Finally, the defendants insist that the government's lack of reliance on the tolling order is not irrelevant because the defense is entitled to argue that the government is only charging wire fraud affecting a financial institution because it had no basis to toll the statute as to spoofing charges. The defendants maintain that "the prosecutors shoehorned a spoofing case into a wire fraud charge to cover up their own wrongdoing" and that they should be permitted to buttress their defense with that evidence.

Not so. Putting aside that the prosecutors did not misrepresent anything to the Court in seeking the tolling order to address this point, the reasons that the prosecutors pursued charges of wire fraud affecting a financial institution rather than spoofing charges are simply irrelevant to whether the defendants are guilty of those charges. The Court has little doubt that the prosecutors have charged wire fraud affecting a financial institution in part because it has a longer statute of limitations, but it is hardly surprising to learn that prosecutors prefer statutes with longer limitations periods than they do those with shorter periods. That choice says nothing about the prosecutors' subjective belief about the "fit" of those charges and, even if it did, it is axiomatic that the subjective beliefs of government officials about the strength of the charges is simply irrelevant. Certainly the prosecutors cannot offer their opinions that the evidence is a "good fit" for the charges. *See*, *e.g.*, *United States v. Cunningham*, 462 F.3d 708, 712-13 (7th Cir. 2006) (reversing conviction where government introduced evidence of opinions of government officials that wiretap applications were supported by probable cause). There is no more basis or logic that

permits a defendant to present evidence that prosecutors believe that a charge is a "poor fit" for the facts.

The defendants rely on *Kyles v. Whitley*, 514 U.S. 419 (1995) for their argument in this regard, but that case does not suggest that the subjective opinions of prosecutors about the strength of the evidence can be introduced; rather, it merely holds (as relevant here) that the quality of the investigatory methods used by the government may be relevant to the probative force of the evidence obtained in an investigation. *See id.* at 446 n.15. The argument at bar has nothing to do with the quality of the government's investigatory methods; the defendants do not suggest that the evidence would be any different but for the allegedly improper tolling application.

Whether the facts proven at trial are a good fit, or a poor fit, for the charges the defendants face is a question for the jury. Where the defendant claims that the government committed some form of misconduct during the investigation does not itself give rise to a trial defense; there is no stand-alone defense of outrageous government conduct. *United States v. Smith,* 792 F.3d 760, 765 (7th Cir. 2015). If misconduct results in the unlawful collection or suppression of evidence, corrective action can be taken. But the alleged misconduct here is untethered to any effect on the evidence the government will present; there is no evidence to suppress or disclose as a result of the allegedly improper tolling application. Whether the prosecutors believe that the charges pending are a good or poor fit for the evidence they will present is neither here nor there.

* * * * *

For the foregoing reasons, the defendants' motion to compel *Brady* and Rule 16 discovery is denied. No evidentiary hearing is required.


Date: September 12, 2020

John J. Tharp, Jr.
United States District Judge